UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **DJUANA MATHIS,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: **4:19-CV-01599-ACA** |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Plaintiff Djuana Mathis appeals the decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Ms. Mathis applied for a period of disability, disability insurance benefits, and supplemental security income, alleging that her disability began on March 30, 2016. (R. at 19). The Commissioner initially denied Ms. Mathis's claims (*id.*), and Ms. Mathis requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 19–20). After holding a hearing, the ALJ issued an unfavorable decision. (R. at

1

16–18). The Appeals Council denied Ms. Mathis's request for review on July 31, 2019, making the Commissioner's decision final and ripe for the court's judicial review. (R. at 1–6). *See* 42 U.S.C §§ 405(g), 1383(c)(3).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks

omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ, Renee Blackmon Hagler, determined that Ms. Mathis had not engaged in substantial gainful activity since the date of the alleged onset of her disability. (R. at 21, 32). The ALJ found that Ms. Mathis had the following severe impairments: a history of gangrene on right toes, hypertension, obesity, history of respiratory and renal failure, and chronic obstructive pulmonary disease. (*Id.* at 22). The ALJ then concluded that Ms. Mathis did not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 24).

After considering the evidence, the ALJ determined that Ms. Mathis had the residual functional capacity to perform light work except: "frequently climb stairs and ramps; never climb ladders, ropes, or scaffolds; frequently balance stoop, kneel, crouch or crawl; only have occasional exposure to temperature extremes, dust, odors, fumes, or pulmonary irritants; and no exposure to unprotected heights." (R. at 25). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Mathis was capable of performing her past relevant work as a food and beverage controller. (*Id.* at 30). The ALJ also found that jobs existed in the national economy that Ms. Mathis could perform at the medium and light exertional levels, such as an informational clerk and a sales attendant. (R. at 56). Accordingly, the ALJ determined that Ms. Mathis has not been under a disability, as defined in the Social Security Act, from March 30, 2016, through the date of the decision on October 11, 2018. (*Id.* at 31).

**IV.   DISCUSSION**

The sole issue on appeal is whether the ALJ properly considered the residual pain and limitations caused by four partially amputated toes on Ms. Mathis's right foot. (Doc. 11 at 5). For the reasons explained below, the court finds that the ALJ properly applied the pain standard, and that substantial evidence supports the ALJ's credibility determination.

To establish disability through testimony of pain or other subjective symptoms, a claimant must meet the Eleventh Circuit pain standard. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The pain standard requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If a claimant testifies as to her subjective complaints of disabling pain and other symptoms, as Ms. Mathis did here, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. (*Id*. (internal quotation omitted)).

Here, the ALJ acknowledged evidence of Ms. Mathis's underlying condition—namely, pain and other difficulties stemming from her partial toe amputations. (R. at 25). However, the ALJ found that that Ms. Mathis's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Doc. 12 at 7–8) (citing R. at 26).

The ALJ articulated several reasons for discrediting Ms. Mathis's statements. For example, while the ALJ noted that Ms. Mathis reported an array of disabling issues following a lengthy hospital stay, a full review of the record revealed that

5

Ms. Mathis was "mostly recovered." (R. at 26, 271). Ms. Mathis argues that "mostly recovered" refers only to recovery from conditions unrelated to her toe amputations and, thus, the ALJ based her decision on isolated evidence. (Doc. 11 at 9–10). This argument is without merit for two reasons. First, the ALJ did consider evidence related to her toes. The ALJ found that, despite the presence of "dry gangrene" on her right toes, Ms. Mathis "ambulated with a walker," and that any toe pain mainly occurred at night. (R. at 280, 303). Second, the fact that Ms. Mathis's toes were amputated does not itself establish that she has a disability that qualifies her for benefits. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (noting that the severity of a medically ascertained disability "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

The ALJ further articulated reasons for discrediting Ms. Mathis's statements regarding the residual pain and limitations she experienced following the partial amputation of her toes. Specifically, the ALJ pointed to records from Gadsden Foot Clinic, which provided that Ms. Mathis was "doing well" one week after the debridement of her gangrenous toes, although she had "some complaints of pain." (R. at 307). Moreover, the Clinic found that Ms. Mathis's toes were "pink and room temperature with good capillary return." (R. at 303). With the exception of a residual ulceration—for which Dr. John Vanore recommended applying antibiotic

ointment—Ms. Mathis's toes were "fully healed." (*Id.*). The ALJ considered evidence that Ms. Mathis presented to an emergency room with toe pain at a level 9 (on a scale of 1 to 10). Treatment notes, however, showed that she was stable for discharge, and that her toes were warm to the touch with no drainage. (R. at 27, 296–98). Based on these inconsistencies, the ALJ discredited Ms. Mathis's statements, and found that she was capable of performing a light range of work. (R. at 26). *See* 20 C.F.R. § 404.1529(c)(4) (allowing an ALJ to consider whether "any inconsistencies exist" between the claimant's statements and the evidence). *See also Foote v. Charter*, 67 F.3d 1553, 1562 (11th Cir.1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

Ms. Mathis argues that the ALJ failed to properly consider the impact of the partial amputations on the Plaintiff's ability to perform activities. This is simply not the case. Ms. Mathis's statements regarding her abilities—that she experiences difficulties breathing and walking because of her toe amputations—conflict with the record evidence. Both the hearing testimony and report from Dr. Samuel E. Fleming, a state agency psychological consultant, indicate that Ms. Mathis does an array of personal activities of varying durations on her own. (R. at 43–44). For example, Ms. Mathis reported that she was able to manage her personal care, drive and ride in a car, leave home, and attend church and appointments. (R. at 28, 49–51).

Ms. Mathis reported to Dr. Fleming that she "does laundry, cooking and vacuuming." (R. at 28).

While Ms. Mathis correctly states that the Eleventh Circuit bars an ALJ from denying a claim based on participation in everyday activities of short duration, the ALJ did not make such an error. (Doc. 11 at 14–15) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Rather, the record indicates that the ALJ examined all of Ms. Mathis's medical records in conjunction with her personal activities, and also considered testimony from the Vocational Expert, medical consultants, psychological consultants and evidence from non-medical sources such as family and friends. This evidence showed that Ms. Mathis had been engaging in daily activities that include a light range of work throughout the problems with her gangrenous toes.

Ms. Mathis also argues that the ALJ did not properly consider the Plaintiff's valid reasons for not having consistent follow up treatment when making her determination. (Doc. 11 at 14). Ms. Mathis suggests that the lack of medical records documenting her continued problems and pain are the result of failure to find affordable care, but the ALJ considered the fact that no further treatment was suggested, and Ms. Mathis did not exhaust her efforts to find further affordable care. (R. at 28, 46).

Moreover, contrary to Ms. Mathis's contention that the ALJ ignored evidence favorable to her (doc. 11 at 8), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211.

The ALJ provided sufficient information from which the court can conclude that she considered Ms. Mathis's condition as a whole; the medical evidence simply fails to show that Ms. Mathis's condition is of "such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer*, 395 F.3d at 1206, 1210. Because "there exists such evidence that a reasonable person would accept" the ALJ's application of the pain standard, substantial evidence supports the ALJ's stated reasons for discrediting Ms. Mathis's subjective complaints. *See Henry*, 802 F.3d at 1267. Accordingly the ALJ's decision is due to be affirmed.

### III. CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Mathis's application for supplemental security income and disability insurance benefits, and this court **AFFIRMS** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 29, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE